In re Charles J. MOSELLO and
Patricia Mosello, Debtors.

Charles J. MOSELLO and
Patricia Mosello

v.

ALI, INC., Anthony Keogh and Amerifirst
Mortgage Corp., Defendants.

Bankruptcy No. 93–B–21859 (ASH).
Adv. No. 95–5073A.

United States Bankruptcy Court,
S.D. New York.

June 14, 1995.

Leonard E. Lombardi, P.C. by Leonard E. Lombardi, Pleasantville, New York, for Plaintiffs/Debtors.

Windels, Marx, Davies & Ives by Susan F. Jennison, New York City, for Defendant ALI, Inc.

### MEMORANDUM DECISION GRANTING MOTION TO DISMISS ADVERSARY PROCEEDING

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

Relying on the so-called "strong arm" provisions of 11 U.S.C. § 544(a)(1), (2) and (3), the debtor-plaintiffs in this adversary proceeding seek a declaratory judgment that defendant ALI, Inc.'s ("ALI") mortgage lien on the debtors' real property was wholly released and extinguished by reason of a "Release of Part of Mortgaged Premises" filed April 29, 1993 which inadvertently described the entire property, rather than two building lots. ALI has moved to dismiss the complaint on the ground that the release of the mortgage lien, even if valid under state law, did not release its statutory lien on the property as a consequence of its judgment of foreclosure. For the reasons set forth below, the motion to dismiss is granted.

### Background

The material facts, which are undisputed, may be briefly summarized. The debtors, Charles J. Mosello and Patricia Mosello, are the owners of real property consisting of approximately 12 to 13 acres in the hamlet of Thornwood, Town of Mt. Pleasant (the "Property"). The Property is in the process

of being subdivided into approximately 20 remaining building lots, two lots having been sold in 1993. In June 1989 the debtors jointly borrowed $1,000,000 from Village Savings Bank and executed a promissory note in that amount collaterally secured by two mortgages, one of which covered the Property. In May 1992 Village Savings Bank obtained a judgment of foreclosure against both debtors in the amount of $1,239,736.56, which was duly recorded in the Office of the Westchester County Clerk. In June 1992 Village Savings Bank and the debtors entered into a forbearance agreement in which the Bank agreed to delay enforcement of the foreclosure judgment and to reduce the amount owed to $1,181,326.89, on condition that the debtors abide by the terms of a repayment schedule contained in the agreement. By June 1, 1993 the debtors had failed to comply with their obligations under the forbearance agreement, and a sheriff's sale of the Property was scheduled for September 30, 1993. Three days prior to the scheduled sale, on September 27, 1993, the debtors filed for protection under Chapter 11 of the Bankruptcy Code.

In May 1993 First Fidelity Bank, N.A. succeeded to Village Savings Bank's interest in the debtors' note, the mortgage and the foreclosure judgment. In December 1993 ALI purchased the interest of First Fidelity Bank, N.A. in the note, mortgage and foreclosure judgment.

This dispute arises from events which occurred in April 1993. In order to raise cash needed to finance development of the Property and meet their obligations under the forbearance agreement, the debtors sold two lots from the Property covered by the mortgage then held by Village Savings Bank. To accommodate the debtors and permit this sale to be consummated, the Bank agreed to release its lien on the two lots which were to be sold. To this end, the Bank executed a document entitled "Release of Part of Mortgaged Premises" dated April 15, 1993 (the "Release") which, by its terms, released from the Bank's mortgage "all that part of said mortgaged lands described as follows: See Schedule 'A' attached hereto and made a part hereof." Apparently unbeknownst to any of

the parties, the Schedule A which was attached to the Release contained a metes and bounds description, comprising two and one-half single-spaced pages of text, of the entire Property, rather than a description of the two lots which were being sold. The Bank also obtained an order of the Supreme Court, Westchester County, correctly vacating the previously filed notice of pendency as to the two specific lots which were being sold and amending the foreclosure judgment by deleting from the description of the Property subject to the Judgment the two specified lots. The order and the Release were both filed in the Westchester County Clerk's Office.

In December 1994 ALI moved for relief from the automatic stay so as to proceed with sale of the Property in accordance with the foreclosure judgment. A hearing on this motion was held in February 1995, and on February 16 this Court signed a Stipulation and Order lifting the stay as to ALI provided that no foreclosure sale could take place before March 16, 1995, and provided further that the relief granted by the Order would be effective only as to ALI and not as to any successor in interest.

As a result of a title search conducted by a third party, on February 17, 1995 ALI learned of the erroneous Schedule A which had been filed on April 29, 1993 as part of the Release. On March 8, 1995 ALI executed a "Corrected Release of Part of Mortgage Premises," substituting a new form of Schedule A which correctly identified the two lots intended to be released from the original mortgage, and the corrected release was filed with the Westchester County Clerk's Office.

### Discussion

Under Fed.R. of Civ.P. 12(b)(6), which is made applicable to this proceeding by Fed.R. of Bankr.P. 7012(b), a defendant may move to dismiss a complaint on the ground that is fails to state a claim upon which relief can be granted. In deciding a motion under Rule 12(b)(6), the court must presume all factual allegations of the complaint to be true and make all reasonable inferences in favor of the non-moving party. *In re Demas,* 150 B.R. 323, 326–27 (Bankr.

S.D.N.Y.1993) (citations omitted); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *See Raine v. Lorimar Prod., Inc.*, 71 B.R. 450, 453 (S.D.N.Y.1987); 2A J. Moore, Moore's Federal Practice, ¶ 12.07[2.–5] at 12–84 (2d ed. 1993). The moving party has the burden of proving that no claim is stated. *Id.* The court should deny a motion under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The court's role is not to weigh the evidence that might be presented at a trial, but merely to determine whether the complaint itself is legally sufficient. *Festa v. Local 3, Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 37 (2d Cir.1990). In determining the sufficiency of the complaint, courts must accept as true the factual allegations contained in the complaint. *Id.* This is not to say, however, that every statement in a complaint must be accepted as true. "The allegations of a complaint must be 'well pleaded' and thus the court need not accept 'sweeping and unwarranted averments of fact.'" *Perniciaro v. Natale (In re Natale)*, 136 B.R. 344, 348 (Bankr.E.D.N.Y.1992) (quoting *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987)). When determining the sufficiency of the complaint for Rule 12(b)(6) purposes, the court's consideration is limited to the factual allegations in the complaint, to documents attached to the complaint as exhibits, or incorporated in it by reference, to matters of which judicial notice may be taken or to documents on which plaintiff relied in bringing suit. *In re Leslie Fay Companies, Inc.*, 166 B.R. 802, 802 (Bankr.S.D.N.Y.1994) (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993)).

The debtors, as debtors in possession, are entitled to exercise the rights of a trustee serving in a case under Chapter 11 by reason of 11 U.S.C. § 1107(a). In that capacity the debtors invoke the provisions of 11 U.S.C. § 544(a) in support of their complaint in this adversary proceeding seeking a declaratory judgment (i) that the ALI mortgage lien was wholly discharged and extinguished by rea-son of the Release filed on April 29, 1993 and that ALI is an unsecured creditor, and (ii) that the foreclosure judgment is ineffective as to the Property because the mortgage lien on the Property was released. As additional relief the debtors seek reinstatement of the automatic stay with respect to the Property and an injunction restraining ALI and defendant, Anthony Keogh, as court-appointed receiver, from proceeding with foreclosure sale of the Property; damages and punitive damages; a declaration that the $600,000 mortgage held by defendant, Amerifirst Mortgage Corp. is a first lien on the Property; and an award of counsel fees pursuant to 11 U.S.C. § 362(d).

Section 544(a) provides as follows:

"(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."

11 U.S.C.A. § 544(a).

Turning first to subsections (1) and (2), these provisions place the debtors, as debtors in possession, in the position of a creditor

obtaining a judicial lien on the Property as of September 27, 1993, the date of their filing under Chapter 11. Since the mortgage lien on the Property was released in April 1993 by reason of the erroneous Schedule A, the debtors argue, the foreclosure judgment predicated on the mortgage lien thereby became void, or at least voidable at the instance of the hypothetical creditor obtaining a judicial lien as of the commencement of the bankruptcy case. ALI, assuming *arguendo* but not conceding that the erroneous Release was effective as a matter of New York law to release the mortgage lien, argues that the statutory lien resulting from the May 1992 foreclosure judgment was not affected by the subsequently filed Release of the mortgage lien and that the statutory lien of the foreclosure judgment cannot be primed by the hypothetical judicial lien referred to in subsections (1) and (2) of section 544(a). Both parties agree that state law must be consulted to ascertain the status and effect of the foreclosure judgment lien and its priority vis-a-vis the hypothetical judicial lien of section 544(a). *Robinson v. Howard Bank (In re Kors, Inc.)*, 819 F.2d 19, 22 (2d Cir.1987); *Varon v. Trimble, Marshall & Goldman (In re Euro–Swiss International Corporation)*, 33 B.R. 872, 882 (Bankr.S.D.N.Y.1983); see 4 *Collier on Bankruptcy* sect. 544.02 (15th Ed.1979).

The governing New York statutory provisions are section 5203 of the New York Civil Practice Law and Rules and Article 9 of the New York Uniform Commercial Code. Subsection (a) of CPLR § 5203, entitled "Priority and lien on docketing judgment", states, in pertinent part:

"No transfer of an interest of the judgment debtor in real property, against which property a money judgment may be enforced, is effective against the judgment creditor ... from the time of the docketing of the judgment with the clerk of the county in which the property is located...."

Matthew Bender, *New York Civil Practice Annual*, CPLR § 5203(a). The foreclosure judgment (ALI Exhibit D in support of the motion) is on its face a "money judgment" as defined in CPLR § 105(q) (see the third decretal paragraph). The judgment was filed in the County Clerk's Office on May 8, 1992. Under the express language of CPLR § 5203(a), no judicial lien obtained by a hypothetical section 544(a)(1) or (2) creditor on September 27, 1993, the date of commencement of this Chapter 11 case, "is effective against the judgment creditor ... from the time of the docketing of the judgment with the clerk of the county in which the property is located," i.e., May 8, 1992.

Under section 9–301(3) of the New York UCC, a lien creditor is defined as "a creditor who has acquired a lien on the property involved ... and a trustee in bankruptcy from the date of the filing of the petition...." With exceptions not relevant here, unperfected security interests are subordinate to the claims of a lien creditor. See New York UCC 9–301(1). The foreclosure judgment lien obtained by ALI's predecessor was not unperfected. The foreclosure judgment was filed and, under CPLR § 5203(a), it takes precedence over *any* subsequent transfer with respect to the debtors' property, with no exception for a subsequent judicial lien of a hypothetical creditor under 11 U.S.C. § 544(a)(1) and (2).

The debtors argue in substance, that the judgment lien was inseparable from and dependent upon the mortgage lien, and that the alleged release of the mortgage lien also voided the judgment lien. But they cite no authority for this proposition. None of the cases cited in the debtors' memorandum remotely supports their position. The case mentioned by counsel during oral argument and quoted in the debtors' brief, *Barnard v. Onderdonk*, 98 N.Y. 158 (1885), if relevant at all, appears to be inconsistent with the debtors' argument. In *Onderdonk*, the Court of Appeals held that a mortgage lien remained in force and was subject to the statute of limitations notwithstanding a subsequent decree of foreclosure. The Court recognized that the judgment lien and the mortgage lien were separate and distinct.* It then con-

---

* Thus, the Court stated that after a foreclosure judgment "[t]he debt upon the bond then is secured by the mortgage *and also* by the decree"

(98 N.Y. at 165, emphasis supplied), and the Court went on to refer to "this double security" (*Id.*).

cluded that if by virtue of a foreclosure judgment a "new security" had formed, policy dictated that the statute of limitations had run against the decree as well. *Id.* at 166.

To summarize, I conclude that the debtors cannot prevail in this adversary proceeding based upon 11 U.S.C. § 544(a)(1) and (2). Assuming for the sake of argument that the erroneous Release filed on April 29, 1993 was effective under New York law to release and extinguish the creditor's contractual mortgage lien on the Property, the Release had no effect on the validity or statutory priority of the foreclosure judgment which was filed on May 8, 1992 and correctly amended by the order filed July 23, 1993. No authority and no logic mandates that an erroneous release of a mortgage lien should vitiate a valid and correct judgment. The foreclosure judgment lien was neither void nor voidable at the instance of a hypothetical creditor envisioned by section 544(a)(1) and (2), because under the express language of CPLR § 5203(a) no judicial lien obtained by any such creditor in September 1993 could be "effective" against the prior foreclosure judgment which was docketed in May 1992.

■ Little need be said of the debtors' argument based on subsection (3) of 11 U.S.C. § 544(a). Subsection (3) gives the debtors the rights and powers of a "bona fide purchaser of real property," without regard to any actual "knowledge" possessed by the debtors. The term "knowledge" refers to actual knowledge but not constructive knowledge. *In re Euro–Swiss International Corporation,* 33 B.R. at 881. Thus, although the debtors are relieved of any actual knowledge they possess relating to the prior lien, they remain vulnerable to a charge that they were in possession of constructive knowledge. See *In re Morse,* 30 B.R. 52, 54–55 (1st Cir. BAP 1983); *McCannon v. Marston,* 679 F.2d 13, 16 (3d Cir.1982); *In re Hardway Restaurant, Inc.,* 31 B.R. 322, 328–29 (Bankr.S.D.N.Y. 1983).

■ Based on the facts presented here, there could not have been a bona fide purchaser of the Property without notice of the foreclosure judgment. The requirements for bona fide purchaser status are governed by the substantive state law pertaining to the

subject property. *In re Bygaph, Inc.,* 56 B.R. 596, 602 (Bankr.S.D.N.Y.1986). Under New York law:

> "A bona fide purchaser is one who would have checked the appropriate recording office for real estate transfers and who would not have learned of any impairment in the transferor's title. [citations omitted]"

*In re Minton Group, Inc.,* 27 B.R. 385, 388 (Bankr.S.D.N.Y.1983). See also *In re Euro–Swiss International Corporation,* 33 B.R. at 882 (stating that under New York law constructive knowledge consists of what may be revealed by an examination of the record or "reasonable inquiry on the basis of all the circumstances").

No hypothetical purchaser could have obtained bona fide purchaser status in September 1993 so as to gain rights in the Property superior to the statutory lien of the foreclosure judgment or, for that matter, the mortgage lien. The Release itself provided constructive notice of the defect. The document was entitled "Release of *Part* of Mortgaged Premises" (emphasis supplied) and the granting clause stated that the creditor released "all that *part* of said mortgaged lands described as follows ..." (emphasis supplied). Any prospective purchaser examining the document carefully enough to discern that Schedule A described the entire property, not merely a "part" of the property, would have been on notice that the document was internally inconsistent, thereby requiring further inquiry to justify good faith reliance. Furthermore, a bona fide purchaser under New York law would have been required to examine the entire public record and would have discovered the foreclosure judgment and the amending order correctly describing the two lots carved out of the property subject to the creditor's lien, which would have fully exposed the error in Schedule A annexed to the Release as originally filed. See *Astoria Federal Savings & Loan Ass'n v. June,* 190 A.D.2d 644, 645, 593 N.Y.S.2d 250, 252 (App.Div., 1st Dep't 1993); see also, *Maine Nat'l Bank v. Morse (In re Morse),* 30 B.R. 52, 55 (1st Cir. BAP 1983) ("[a] purchaser or creditor who searched the records would have discovered an obvious incon-

sistency ... [a]t that point, one could not ignore this inconsistency in the hopes of avoiding that which further inquiry would reveal").

On the undisputed facts, the debtors' claims asserted in this adversary proceeding under all three subsections of 11 U.S.C. § 544(a) must fail as a matter of law. Accordingly, the motion of defendant ALI, Inc. is granted and the complaint is dismissed against all defendants. Settle order.